IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTINA C.,[1]

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

Civ. No. 3:19-cv-00449-AA

**OPINION & ORDER**

AIKEN, District Judge:

Plaintiff Christina C. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

On March 14, 2015, Plaintiff filed a Title II application for a period of disability and disability insurance benefits alleging disability beginning on March 2, 2015. Tr. 15. The application was denied initially and upon reconsideration and, at Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on November 7, 2017. *Id.* On March 14, 2018, the ALJ issued a decision finding Plaintiff not disabled. Tr. 27. The Appeals Council

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

denied review on February 13, 2019, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This action followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity from October 2015 through December 2015 and that Plaintiff met the insured status requirement through December 31, 2021. Tr. 17. However, the ALJ found that there had been a continuous 12-month period during which the claimant did not engage in substantial gainful activity. Tr. 18.

At step two, the ALJ found that Plaintiff had a single medically determinable impairment, chronic pancreatitis. Tr. 18. At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal a listed impairment. Tr. 22.

The ALJ determined that, as of the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following additional limitations: she can work in a job that requires her to climb ladders, ropes, scaffolds, ramps, and stairs, but no more often than frequently; she can perform tasks that require her to frequently stoop, crouch, crawl, and kneel; she can work in a setting with no exposure to hazards such as unprotected heights and large moving equipment; and "due to the impact of pain, she can understand, remember, and apply information consistent with the completion of tasks that require GED reasoning level 3 or less." Tr. 23.

At step four, the ALJ determined that Plaintiff could perform her past relevant work as a nursery school attendant. Tr. 26. As a result, the ALJ determined that Plaintiff was not disabled between the alleged onset date of March 2, 2015, and the date of the ALJ's decision. Tr. 27.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record.

*Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff asserts the ALJ erred by (1) discounting Plaintiff's subjective symptom testimony; (2) discounting medical opinion evidence of treating physician Richard Kozarek, M.D.; and (3) discounting lay witness testimony. Plaintiff asserts that these errors infected the ALJ's formulation of Plaintiff's RFC and resulted in an unsupported determination at step four of the sequential analysis.

### I.  Subjective Symptom Testimony

Plaintiff asserts that the ALJ erred by discounting her subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis.

20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements concerning the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

At the hearing, Plaintiff testified that worked nine hours per week as a preschool teacher and that she had been working in that field for fifteen to twenty years. Tr. 38. Plaintiff testified that she had daily abdominal pain which waxes and wanes. Tr. 41. Plaintiff rated her pain as a 7 or 8 out of 10, which would reduce to 5 out of 10 with pain medication. *Id.* Plaintiff testified that she has experienced this level of pain consistently since she was in high school. Tr. 41-42. When the pain "flares," Plaintiff testified that it exceeds the 10-point scale and prevents her from working. Tr. 42. These flares occur 2 or 3 times per month and she had up to 3 absences from work each month. *Id.* Plaintiff testified that the flares lasted between 3 and 14 days and would

cause her to miss a whole week of work. Tr. 42-43. Plaintiff testified that she missed a week of work 4 to 5 times in the year before the hearing. Tr. 43.

In terms of medication, Plaintiff testified that she took oxycodone daily for pain, as well as Zofran for nausea and Advil for headaches. Tr. 40. Plaintiff testified that the oxycodone caused nausea and dizziness, which lasted for 4 hours and would prevent her from driving. *Id.* The oxycodone "usually lowers the pain but doesn't completely take it away." Tr. 41. Plaintiff testified that Zofran controlled her nausea and she took it 3 or 4 times per month. Tr. 40-41.

Plaintiff lives with her boyfriend and her adult daughter. Tr. 43. Plaintiff does the laundry and washes the dishes. *Id.* She is able to dress and bathe herself. Tr. 45. Plaintiff testified that she needs assistance grocery shopping because of the dizziness from her medication makes driving difficult and because Plaintiff cannot lift the groceries. Tr. 43-44. Plaintiff testified that she could lift and carry 10 pounds in an 8-hour day due to her abdominal pain. Tr. 44. Plaintiff could sit in a chair for between 1 and 2 hours before needing to move and could stand for an hour. *Id.* Plaintiff testified that she could walk for 30 minutes before needing to sit down. *Id.* Plaintiff spends 4 hours per day laying down and needs frequent access to a restroom. Tr. 45. Plaintiff's nausea causes her to vomit twice per month. Tr. 46. Plaintiff has difficulty sleeping, which affects her energy level during the day. Tr. 47-48. Plaintiff testified that she does not have any special accommodations from her employer and does not have a lifting restriction from a physician. Tr. 44, 46.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her symptoms, but that Plaintiff's testimony concerning the intensity, persistence, and limiting effect of those symptoms was not entirely consistent with the evidence in the record. Tr. 24.

First, the ALJ noted that Plaintiff's testimony was inconsistent with "generally normal findings on physical evaluation," noting normal gait, strength, sensation, range of motion in joints, neurological system, and mobility, as well as non-distended abdomen without peritoneal signs. Tr. 24; *see also* Tr. 438, 511, 520, 532, 550, 559, 573, 577, 580, 583-84, 587, 591, 642, 656, 660. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). However, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle*, 533 F.3d at 1161. Although, as Plaintiff points out, her claim for disability is not based on an impairment related to her joints or muscles, the ALJ reasonably considered these medical records in assessing Plaintiff's testimony that she suffers from extreme limitations in lifting and carrying, walking, sitting, and standing. The Court concludes that the ALJ did not err in considering the objective medical evidence in weighing Plaintiff's testimony.

Plaintiff asserts that the ALJ improperly "cherry-picked" instances of relatively good function to reach a finding that Plaintiff was not disabled. An ALJ is not permitted to "cherry-pick" from mixed results to support a denial of benefits. *Garrison v. Colvin*, 759 F.3d 995, 1017 n.23 (9th Cir. 2014). An ALJ may, however, interpret reports with an understanding of the plaintiff's overall well-being and the nature of their symptoms and as examples of a broader development. *Attmore v. Colvin*, 827 F.3d 872, 877-78 (9th Cir. 2016). In this case, the ALJ did not engage in impermissible cherry-picking, but discussed the intermittent nature of Plaintiff's flare-ups in some detail. Tr. 24-25.

The ALJ also noted that Plaintiff's hearing testimony was at odds with her own function report. Tr. 24. In her function report, Plaintiff was presented with a check-box list asking her to

indicate activities affected by her condition. Tr. 207. Although Plaintiff testified that she had extreme limitations in lifting, walking, sitting, and standing, Plaintiff did not check the boxes associated with any of those activities and instead checked only the box for "completing tasks." *Id.* The ALJ also weighed Plaintiff's testimony concerning frequent absences of up to a week from work and weighed that testimony against the records from Plaintiff's employer. Tr. 25. Although Plaintiff's time sheets do reflect the use of sick days, the time sheets do not match Plaintiff's testimony concerning either the frequency or duration of those sick days. Tr. 304-38, 341-45. An ALJ is permitted to consider such inconsistencies in weighing symptom testimony. *Ghanim*, 763 F.3d at 1163.

The ALJ also considered Plaintiff's part-time work as a preschool teacher. Tr. 24-25. Consideration of daily activities is proper when they indicate activity or skills that are transferable to the workplace, or when the activities contradict the claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Although Plaintiff disputes the conclusions drawn by the ALJ with respect to Plaintiff's absences, Tr. 25, the Court concludes that the ALJ did not improperly consider Plaintiff's part-time work in assessing her subjective symptom testimony.

In sum, the Court concludes that the ALJ gave sufficient bases for discounting Plaintiff's subjective symptom testimony.

## II.  Medical Opinion Evidence

Plaintiff contends that the ALJ erred by discounting the medical opinion of Plaintiff's treating physician Dr. Kozarek. The ALJ is responsible for resolving conflicts in the medical

record. *Carmickle*, 533 F.3d at 1164. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

Dr. Kozarek submitted a letter in support of Plaintiff's application for disability benefits on April 4, 2017. Tr. 526. In that letter, Dr. Kozarek identified himself as Plaintiff's long-time gastroenterologist and explained Plaintiff's pancreatic condition. *Id.* Dr. Kozarek stated that, despite surgery, Plaintiff "continues to have refractory pain requiring chronic narcotics, interfering with her ability to work in a steady fashion," and that, in his opinion, "her pain precludes steady gainful employment." *Id.*

The ALJ gave "limited weight" to Dr. Kozarek's opinion, noting that "although it is from a treating source, it is on an issue reserved to the Commissioner and is inconsistent with other substantial evidence in the record." Tr. 26. A treating physician's opinion is not conclusive as to the ultimate question of disability. *Rodriguez v. Bowen*, 876 F.2d 759, 761-62 (9th Cir. 1989). While a treating physician's "evaluation of a patient's ability to work may be useful or suggestive of useful information," the "law reserves the disability determination to the Commissioner." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011). Here, the ALJ found that Dr. Kozarek's opinion was contradicted by the opinions of the reviewing physicians, Tr. 26, and so the ALJ was only required to provide specific and legitimate reasons supported by substantial evidence for

assigning reduced weight to Dr. Kozarek's opinion. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006). The ALJ noted that, contrary to Dr. Kozarek's opinion, Plaintiff "has been consistently employed with no significant variation in her employment except insofar as the employers she works for have varying needs for part-time nursery school instructors." Tr. 26. On this record, the Court concludes that the ALJ gave sufficient specific and legitimate reasons for discounting Dr. Kozarek's opinion.

### III. Lay Witness Testimony

Plaintiff asserts that the ALJ erred by discounting the opinions of a number of lay witnesses. An ALJ must take into account lay witness testimony as to the severity of a plaintiff's symptoms. *Nguyen v. Charter*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ may discount lay witness testimony by providing "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

In this case, Plaintiff's mother, Lynn L., submitted a function report, Tr. 219-26, and a letter in support of Plaintiff's application for disability, Tr. 276-77. Lynn L. reported that Plaintiff was in constant pain, which made it difficult for her to move or eat and which would prevent her from working. Tr. 219. Lynn L. also described Plaintiff's history of flare-ups in her pancreatitis. Tr. 276. Plaintiff's friend and supervisor, Michelle McAdams, submitted a letter in support of Plaintiff's application, describing how Plaintiff's condition makes it difficult for her to work. Tr. 278. Plaintiff's friends and coworkers, Stacy Allen and Dana Chogyoji, similarly wrote that Plaintiff suffers from pain and was unable to work. Tr. 280-81.

The ALJ gave "little weight" to the lay witness statements, noting that they "are neither explained nor supported by medically acceptable clinical or laboratory diagnostic techniques, and the opinions are inconsistent with the objective and other substantial evidence of record such as

generally normal findings on physical examination." Tr. 25. Inconsistency with medical evidence is a sufficient germane reason for discounting lay witness testimony, as is inconsistency with the record of a claimant's activities. *Bayliss*, 427 F.3d at 1218. As noted in the previous section, the ALJ properly considered the medical record and found it to be inconsistent with Plaintiff's allegation of a disabling impairment, which generally mirrors the lay witness statements and so the Court concludes that the ALJ did not err in discounting the lay witness statements of Lynn L., Michelle McAdams, Stacy Allen, and Dana Chogyoji. Any error in the other reasons provided by the ALJ for discounting the lay witness opinions is therefore harmless.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this ___18th___ day of April 2022.

                                                 /s/Ann Aiken
                                                 ANN AIKEN
                                                 United States District Judge